1  KAZEROUNI LAW GROUP, APC
   Abbas Kazerounian, Esq. [249203]
2  ak@kazlg.com
   245 Fischer Ave, Unit D1
3  Costa Mesa, CA 92626
   Phone: (800) 400-6808
4  Fax: (800) 520-5523

5  BLC LAW CENTER, APC
   Ahren A. Tiller, Esq. ]250608]
6  ahren.tiller@blc-sd.com
   1230 Columbia St., Ste. 1100
7  San Diego, CA 92101
   Phone: (619) 894-8831
8  Fax: (866) 444-7026

9  *Attorneys for Plaintiffs*

10

11            **UNITED STATES DISTRICT COURT**

12           **SOUTHERN DISTRICT OF CALIFORNIA**

13  AILEEN MARQUEZ, MARIA DIANA       Case No.: 3:22-cv-01591-GPC-KSC
    DE LA ROSA, and JORGE A.
14  RODRIGUEZ, for themselves and all
    those similarly situated,          **CLASS ACTION**
15
           Plaintiffs,                 **SECOND AMENDED CLASS**
16                                      **ACTION COMPLAINT FOR**
        vs.                            **DAMAGES AND INJUNCTIVE**
17                                      **RELIEF PURSUANT TO:**

18  CAPITAL ONE BANK, USA N.A.;        (1) THE ROSENTHAL FAIR DEBT
    CAPITAL ONE FINANCIAL              COLLECTION PRACTICES ACT,
19  CORPORATION; and CAPITAL ONE,      CAL CIV. C. § 1788, *ET. SEQ*;
    N.A.;
20                                      (2) THE TELEPHONE CONSUMER
                                        PROTECTION ACT, 47 U.S.C § 227,
21         Defendants.                  *ET SEQ.*

22

23                                      **JURY TRIAL DEMANDED**

24

25

26

27

28

                                   - 1 -
*Marquez et. al. v. Capital One Bank, USA N.A. et. al.* – Second Amended Complaint
Case No. 3:22-cv-0159—GPC-KSC

**INTRODUCTION**

1. AILEEN MARQUEZ ("Ms. Marquez"), MARIA DIANA DE LA ROSA ("Ms. De La Rosa"), and JORGE A. RODRIGUEZ ("Mr. Rodriguez") (together the "Plaintiffs"), by and through their counsel of record, bring this action against CAPITAL ONE BANK, USA N.A.; CAPITAL ONE FINANCIAL CORPORATION; and CAPITAL ONE, N.A (collectively the "Defendants"), on behalf of themselves and all those similarly situated, pertaining to actions by Defendants to unlawfully collect a debt allegedly owed by Plaintiffs, including but not limited to, violations of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. C. §§ 1788-1788.32 ("RFDCPA"), and collection via the use of calls with a prerecorded voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), and the thereby invading Plaintiffs' privacy, and causing Plaintiffs damages.

2. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system. The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others. The legislature's explicit purpose of enacting the RFDCPA was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts.[1] Cal. Civ. Code § 1877.17 incorporates the FDCPA into the RFDCPA, by stating that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k

---

[1] CA Civil Code §§ 1788.1(a)-(b).

1    of, Title 15 of the United States Code.

2    3.    The Telephone Consumer Protections Act (hereinafter referred to as "the TCPA")

3    was designed to prevent calls like the ones described within this complaint, and to

4    protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints

5    about abuses of telephone technology – for example, computerized calls dispatched

6    to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin.*

7    *Servs., LLC*, 132 S. Ct. 740, 744 (2012).

8    4.    In enacting the TCPA, Congress specifically found that "the evidence presented to

9    Congress indicates that automated or prerecorded calls are a nuisance and an

10    invasion of privacy, regardless of the type of call . . ." *Id.* at §§ 12-13. *See also*,

11    *Mims,* 132 S. Ct., at 744.

12    5.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding

13    calls like those alleged herein:

14
15            The Telephone Consumer Protection Act … is well known
               for its provisions limiting junk-fax transmissions. A less-
16            litigated part of the Act curtails the use of automated dialers
               and prerecorded messages to cell phones, whose subscribers
17            often are billed by the minute as soon as the call is
               answered—and routing a call to voicemail counts as
18            answering the call. An automated call to a landline phone can
               be an annoyance; an automated call to a cell phone adds
19            expense to annoyance.
20
21        *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 638 (7th Cir. 2012).

22    6.    Plaintiffs make the allegations contained herein on information and belief, except

23    as to those allegations regarding themselves, which are made and based upon

24    personal knowledge.

25                        **JURISDICTION AND VENUE**

26    7.    This action is based on Defendants' violations of the TCPA and RFDCPA.

27    8.    This Court has personal jurisdiction over the Defendants, as the unlawful practices

28

alleged herein occurred in California, in the County of San Diego and violated California's Civil Code §§ 1788 – 1788.32.

9. This Court has original jurisdiction over Plaintiffs' federal TCPA claims. *Mims*, 132 S. Ct. at 743. This Court has supplemental jurisdiction over the RFDCPA claims pursuant to 28 U.S.C. § 1367(a).

10. The unlawful practices alleged herein occurred in California, in the County of San Diego and violated California's Civil Code §§ 1788 - 1788.32.

## PARTIES

11. Ms. Marquez was, and at all times mentioned herein, is a natural person residing in the County of San Diego, in the State of California.

12. Ms. De La Rosa was, and at all times mentioned herein, is a natural person residing in the County of San Diego, in the State of California.

13. Mr. Rodriguez was, and at all times mentioned herein, is a natural person residing in the County of San Diego, in the State of California.

14. Plaintiffs are natural persons from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiffs, and therefore Plaintiffs are "debtors" as that term is described by Cal Civ. Code §1788.2(h).

15. Defendants CAPITAL ONE BANK, USA N.A. and CAPITAL ONE, N.A., are, each of them, National Banking Associations. Defendants CAPITAL ONE BANK, USA N.A. and CAPITAL ONE, N.A., each of them, operate as a bank, and provide products and services including savings accounts, loans, mortgages, investment funds, credit and debit cards, insurance, electronic banking, capital markets and advisory, and private banking. Additionally, each of them serves customers worldwide, throughout the State of California, including this County.

16. Defendant CAPITAL ONE FINANCIAL CORPORATION is a Delaware Corporation who functions as the parent company of Defendants CAPITAL ONE

BANK, USA N.A. and CAPITAL ONE, N.A.  All Defendants are headquartered in Virginia.

17. Defendant CAPITAL ONE FINANCIAL CORPORATION is a diversified financial service holding company with banking and non-banking subsidiaries that offer a broad array of financial products and services to consumers.

18. Defendants CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE, N.A., AND CAPITAL ONE BANK (USA), N.A., are essentially the same entity, despite the formal nomenclature distinctions.  Defendants all share the same website: www.capitalone.com.

19. Defendants CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE, N.A., AND CAPITAL ONE BANK (USA), N.A., all share the same corporate headquarters located at: 1680 Capital One Drive, McLean, VA 22102-3491.

20. Defendants CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE, N.A., AND CAPITAL ONE BANK (USA), N.A., all share common office space and employees, specifically including those employees who are assigned to collection of delinquent debts owed to any of said subsidiary entities of Capital One Financial.

21. Plaintiffs allege, on information and belief, that there exists, and at all times mentioned existed, a unity of interest and/or ownership between CAPITAL ONE FINANCIAL CORPORATION on the one hand, and CAPITAL ONE, N.A., and CAPITAL ONE BANK (USA), N.A. on the other hand, such that any individuality and separateness between them has ceased to exist.  CAPITAL ONE, N.A. AND CAPITAL ONE BANK (USA), N.A. are the alter ego of CAPITAL ONE FINANCIAL CORPORATION.  At all relevant times CAPITAL ONE FINANCIAL CORPORATION exercised dominion and control over CAPITAL ONE, N.A. and CAPITAL ONE BANK (USA), N.A., along with CAPITAL ONE FINANCIAL CORPORATION'S other wholly owned subsidiary companies, thus

1    that there is such a unity of interest and ownership that any distinctiveness between

2    the named Defendants has long since ceased to exist.

3    22. CAPITAL   ONE   FINANCIAL   CORPORATION   used   Co-DEFENDANTS

4    CAPITAL ONE, N.A. AND CAPITAL ONE BANK (USA), N.A., and its other

5    wholly owned subsidiaries as mere shells, instrumentalities or conduits to conduct

6    CAPITAL ONE FINANCIAL CORPORATION'S business and shield the

7    Defendants against liability. Adherence to the fiction of separate existence of

8    CAPITAL ONE, N.A. AND/OR CAPITAL ONE BANK (USA), N.A. as distinct

9    separate entities from CAPITAL ONE FINANCIAL CORPORATION would

10   permit abuse of the corporate privilege and produce an inequitable result, because

11   it would allow the Defendants to avoid their liability for their joint concerted

12   wrongful conduct.

13   23. Despite the formal alleged distinction between the different corporate CAPITAL

14   ONE FINANCIAL CORPORATION, and CAPITAL ONE, N.A., and CAPITAL

15   ONE BANK (USA), N.A., here, for all intents and purposes, the Defendants are

16   the same entity. They share the same executive leadership, physical locations, and

17   have significant overlapping staff, such that CAPITAL ONE FINANCIAL

18   CORPORATION exerts total control over its subsidiary entities, so that they

19   essentially function as one.

20   24. In the Defendants' own annual 10-K filing with the SEC, Defendants describe

21   CAPITAL ONE FINANCIAL CORPORATION as the parent entity of BOTH

22   CAPITAL ONE, N.A. AND CAPITAL ONE BANK (USA) N.A., and goes on to

23   collectively refer to all three Defendants for the remainder of the 10-K filing as

24   simply as "Capital One," "The Company," "we," "us," or "our."

25   25. At all times mentioned herein, the Defendants collectively were doing business

26   throughout the country, including this County.

27   26. A significant portion of Defendants' business operations are dedicated to collecting

28

debts owed to them, primarily consumer credit card debt.  Part of Defendants regular business practice is to make repeated phone calls to persons it believes are responsible for paying past-due debts.

27. Defendants regularly attempt to collect using mails, electronic communication, and telephone calls, "consumer debts" allegedly owed to it, as that term is defined by Cal. Civ. Code §1788.2(f).

28. When individuals owe Defendants debts for regular monthly payments on consumer loans and credit cards, and other similar obligations, Defendants collect on those consumer debts owed to them through the mail, electronic communication, and telephone calls.  Therefore, Defendants are each "debt collectors" as that term is defined by Cal. Civ. Code §1788.2(c) and each engage in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

29. This case involves money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a "consumer credit transaction," because Plaintiffs' respective Capital One credit card accounts were used for primarily household purposes.  Thus, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

## ALLEGATIONS AS TO PLAINTIFF AILEEN MARQUEZ

30. Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

31. Cal. Civ. Code § 1877.17 states that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

32. At all times relevant hereto, Defendants used, controlled and/or operated equipment that placed calls to Ms. Marquez's cellular telephone using an artificial or prerecorded voice as that term is defined in 47 U.S.C. § 227(b)(1)(A).

33. This case involves money, property, or their equivalent, due, or owing or alleged to be due or owing from a natural person by reason of a "consumer credit transaction." The debt owed to Defendants is an obligation incurred primarily for personal, family, or household purposes, and a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes. Thus, this action arises out of a "debt" and "consumer debt" as those terms are defined by 15 U.S.C. § 1692(a)(5) and Cal. Civ. Code §1788.2(f) respectively.

34. On or about September of 2007, and again in 2010, Ms. Marquez was issued consumer credit card accounts by Defendants. The consumer credit accounts were issued, serviced, and collected upon by Defendants.

35. Ms. Marquez made payments toward the credit card accounts when she took them out, and maintained good standing until December of 2021, when unfortunately, Ms. Marquez fell on financial hardship and was unable to maintain the regular monthly payments.

36. Upon going into default on said Defendants' consumer credit accounts, agents for Defendants called Ms. Marquez multiple times and requested payment, often 3-4 times per day, almost every single day.

37. Ms. Marquez sought out and retained an attorney to represent her with regards to the debts allegedly owed to Defendants.

38. On February 3, 2021, an associate attorney at BLC Law Center, APC, drafted and mailed a cease and desist letter, to the following address for Defendant: P.O. Box 30285, Attn: Gen Correspondence, Salt Lake City, UT, 84130, whereby Ms. Marquez's attorneys stated in writing that Ms. Marquez was revoking consent to call and/or contact her via any means, that Ms. Marquez had retained counsel, and that Defendants needed to cease calling Ms. Marquez pursuant to the RFDCPA.

39. The February 3rd cease and desist letter referenced the last four digits of Ms. Marquez's social security number next to her name in order to help identify Ms. Marquez.    Said letter clearly informed Defendants that Ms. Marquez was represented by counsel, thus said letter constituted written notice pursuant to Cal. Civ. Code §§ 1788.14(c) that Ms. Marquez was represented by an attorney with respect to any debt allegedly owed to or serviced by Defendant, and request was thereby made that all communications regarding this alleged consumer debt must be directed exclusively to Ms. Marquez's attorney, and said cease and desist letter clearly revoked any prior consent to contact Ms. Marquez via the use of an automated dialing system phone, text, or other method, including but not limited to calls with a pre-recorded or automated voice messages.

40. Despite Defendants' receipt of the February 3rd cease and desist letter, Defendants continued to call Ms. Marquez's cellular telephone and request payments, often 3-4 times per day, almost every single day, often using a recorded voice.

41. On at least two (2) occasions, Ms. Marquez picked up the phone when agents for Defendants called and she repeatedly informed the representatives from Defendants that she had retained counsel and told them to stop calling her.

42. Defendants have called Ms. Marquez over one hundred (100) times in total, after receipt of written notice, and oral notice, that Ms. Marquez revoked any prior consent to call Ms. Marquez, that Ms. Marquez had retained counsel for any debts owed to Defendant, and an explicit warning that all direct contact with Ms. Marquez should cease pursuant to the RFDCPA.

43. Defendants or their agents or representatives, contacted Ms. Marquez on her cellular telephone over one hundred (100) times since February 3, 2021, including using a recorded voice.    Thus, many of Defendants' calls to Ms. Marquez after receiving the letter contained an "artificial" and/or "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

44. The multiple calls made by Defendants or their agents after February 3, 2021, were therefore made in violation of 47 U.S.C. § 227(b)(1).

45. Despite receipt of Ms. Marquez's February 3, 2021 letter sent to Defendants' mailing address, which provided irrefutable notice that Ms. Marquez had revoked consent to call her cellular telephone by any means and that she had retained counsel regarding these alleged debts, Defendants continued to call Plaintiff at least one hundred (100) times.

**ALLEGATIONS AS TO PLAINTIFF MARIA DIANA DE LA ROSA**

46. Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

47. Cal. Civ. Code § 1877.17 states that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

48. At all times relevant hereto, Defendants used, controlled and or operated equipment that placed calls to Ms. De La Rosa's cellular telephone using an artificial or prerecorded voice as that term is defined in 47 U.S.C. § 227(b)(1)(A).

49. This case involves money, property, or their equivalent, due, or owing or alleged to be due or owing from a natural person by reason of a "consumer credit transaction." The debt owed to Defendants is an obligation incurred primarily for personal, family, or household purposes, and a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes. Thus, this action arises out of a "debt" and "consumer debt" as those terms are defined by 15 U.S.C. § 1692(a)(5) and Cal. Civ. Code §1788.2(f) respectively.

50. On or about September of 2010 and again on or about January of 2012, Ms. De La

Rosa was issued consumer credit card accounts by Defendants. The consumer credit accounts were issued, serviced, and collected upon by Defendants.

51. Ms. De La Rosa made payments toward the credit card accounts when she took them out, and maintained good standing until on or about March of 2022, when unfortunately, Ms. De La Rosa fell on financial hardship and was unable to maintain the regular monthly payments.

52. Upon going into default on said Defendants' consumer credit accounts, agents for Defendants called Ms. De La Rosa multiple times and requested payment, often 3-4 times per day, almost every single day.

53. Ms. De La Rosa sought out and retained an attorney to represent her with regards to the debts allegedly owed to Defendant.

54. On June 2, 2022, an associate attorney at BLC Law Center, APC, drafted and mailed a cease-and-desist letter, to the following address for Defendant: P.O. Box 30285, Attn: Gen Correspondence, Salt Lake City, UT, 84130, whereby Ms. De La Rosa's attorneys stated in writing that Ms. De La Rosa was revoking consent to call and/or contact her via any means, that Ms. De La Rosa had retained counsel, and that Defendants needed to cease calling Ms. De La Rosa pursuant to the RFDCPA.

55. Plaintiffs' counsel additionally sent three (3) more copies of the June 2, 2022 cease and desist letter to Defendants at the following facsimile numbers: (866) 941-4014, (866) 940-4024, and (888) 259-3021.

56. The facsimile transmission went through successfully, and thus Defendants received notice on June 2, 2022 at three different fax numbers.

57. The cease and desist letter referenced the last four digits of Ms. De La Rosa's social security number next to her name in order to help identify Ms. De La Rosa. Said letter clearly informed Defendants that Ms. De La Rosa was represented by counsel, thus said letter constituted written notice pursuant to Cal. Civ. Code §§

1788.14(c) that Ms. De La Rosa was represented by an attorney with respect to any debt allegedly owed to or serviced by Defendant, and request was thereby made that all communications regarding this alleged consumer debt must be directed exclusively to Ms. De La Rosa's attorney, and said cease and desist letter clearly revoked any prior consent to contact Ms. De La Rosa via the use of an automated dialing system phone, text, or other method, including but not limited to calls with a pre-recorded or automated voice messages.

58. Defendants have called Ms. De La Rosa at least four (4) times after receipt of the faxed letters referenced above, in order to collect on their debt after receipt of written notice by both mail and facsimile, that Ms. De La Rosa revoked any prior consent to call Ms. De La Rosa, that Ms. De La Rosa had retained counsel for any debts owed to Defendant, and an explicit warning that all direct contact with Ms. De La Rosa should cease pursuant to the RFDCPA.

59. Defendants or their agents or representatives, contacted Ms. De La Rosa on her cellular telephone at least four (4) times, including using a recorded voice.  Thus, many of Defendants' calls to Ms. De La Rosa after receiving the letter contained an "artificial" and/or "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

60. The calls made by Defendants or their agents after June 2, 2022, were therefore made in violation of 47 U.S.C. § 227(b)(1).

61. Despite receipt of Ms. De La Rosa's June 2, 2022 letter sent to Defendants' mailing address and multiple facsimile numbers (that are instantly transmitted upon completion of the facsimile), which provided irrefutable notice that Ms. De La Rosa had revoked consent to call her cellular telephone by any means and that she had retained counsel regarding these alleged debts, Defendants continued to call Ms. De La Rosa.

**ALLEGATIONS REGARDING PLAINTIFF JORGE A. RODRIGUEZ**

62. Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

63. Cal. Civ. Code § 1877.17 states that every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of the Federal Fair Debt Collection Practices Act, sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

64. At all times relevant hereto, Defendants used, controlled and/or operated equipment that placed calls to Mr. Rodriguez's cellular telephone using an artificial or prerecorded voice as that term is defined in 47 U.S.C. § 227(b)(1)(A).

65. This case involves money, property, or their equivalent, due, or owing or alleged to be due or owing from a natural person by reason of a "consumer credit transaction." The debt owed to Defendants is an obligation incurred primarily for personal, family, or household purposes, and a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes. Thus, this action arises out of a "debt" and "consumer debt" as those terms are defined by 15 U.S.C. § 1692(a)(5) and Cal. Civ. Code §1788.2(f) respectively.

66. Prior to 2021, Mr. Rodriguez was issued a consumer credit card account by Defendants. The consumer credit card account was issued, serviced, and collected upon by Defendants.

67. Mr. Rodriguez made payments toward the credit card account when he took it out, and maintained good standing until on or about August 2022, when unfortunately, Mr. Rodriguez fell on financial hardship and was unable to maintain the regular monthly payments.

68. Upon going into default on said Defendants' consumer credit card account, agents

for Defendants called Mr. Rodriguez multiple times and requested payment, often multiple times per day, almost every single day.

69. Mr. Rodriguez sought out and retained an attorney to represent him with regards to the debts allegedly owed to Defendants.

70. On November 10, 2022, an associate attorney at BLC Law Center, APC, drafted and mailed a cease and desist letter, to the following address for Defendant: P.O. Box 30285, Attn: Gen Correspondence, Salt Lake City, UT, 84130, whereby Mr. Rodriguez's attorney stated in writing that Mr. Rodriguez was revoking consent to call and/or contact him via any means, that Mr. Rodriguez had retained counsel, and that Defendants needed to cease calling Mr. Rodriguez pursuant to the RFDCPA.

71. Plaintiffs' counsel additionally sent three (3) copies of the November 10, 2022, cease and desist letter to Defendants at the following facsimile numbers: (866) 941-4014, (866) 940-4024, and (888) 259-3021.

72. The cease and desist letters referenced the last four digits of Mr. Rodriguez's social security number next to his name in order to help identify his account. Said letter clearly informed Defendants that Mr. Rodriguez was represented by counsel, thus said letter constituted written notice pursuant to Cal. Civ. Code §§ 1788.14(c) that Mr. Rodriguez was represented by an attorney with respect to any debt allegedly owed to or serviced by Defendants, and request was thereby made that all communications regarding this alleged consumer debt must be directed exclusively to Mr. Rodriguez's attorneys, and said cease and desist letter clearly revoked any prior consent to contact Mr. Rodriguez via the use of an automated dialing system phone, text, or other method, including but not limited to calls with a pre-recorded or automated voice messages.

73. Despite Defendants receiving receipt of Mr. Rodriguez's attorneys' November 10, 2022, letter, Defendants continued to call Mr. Rodriguez's cellular telephone and

request payments, often multiple times per day, almost every single day, often using a recorded voice.

74. Defendants have called Mr. Rodriguez over one hundred twenty (120) times in total, after receipt of written notice by both mail and facsimile, that Mr. Rodriguez revoked any prior consent to call Mr. Rodriguez and that he had retained counsel for any debts owed to Defendants, and an explicit warning that all direct contact with Mr. Rodriguez should cease pursuant to the RFDCPA.

75. Defendants or their agents or representatives, contacted Mr. Rodriguez on his cellular telephone over one hundred twenty (120) times since November 10, 2022, including using a recorded voice.

76. Mr. Rodriguez has in his possession multiple saved voicemail messages from Defendants that state:

**This is regarding an important business matter. Please return this call at 1-800-955-6600 to discuss further. Again, the number is 1-800-955-6600. Thank you.**

77. Thus, many of Defendants' calls to Mr. Rodriguez after receiving the letter contained an "artificial" and/or "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

78. The multiple calls made by Defendants or their agents after November 10, 2022, were therefore made in violation of 47 U.S.C. § 227(b)(1).

79. Despite receipt of Mr. Rodriguez's November 10, 2022 letter sent to Defendants' mailing address and multiple facsimile numbers, which provided irrefutable notice that Mr. Rodriguez had revoked consent to call his cellular telephone by any means and that he had retained counsel regarding these alleged debts, Defendants continued to call Plaintiff at least one hundred twenty (120) times.

## CLASS ACTION ALLEGATIONS

80. Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

81. Plaintiffs bring this action on behalf of themselves, and all others similarly situated (the "Class" or "National Class") pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3).

82. Plaintiffs represent, and are members of, the Class consisting of:

> All persons within the United States who received any telephone call/s from Defendants or their agent/s and/or employee/s to said person's cellular telephone with an artificial or prerecorded voice within the four years prior to the filing of the Complaint.

83. Plaintiffs additionally bring this action on behalf of themselves, and all others similarly situated (the "Sub-Class" or "California RFDCPA Class").

84. Plaintiffs additionally represent and are members of, the Sub-Class, consisting of:

> All persons within California who, directly or through a representative, sent notice in writing to Defendant/s that they were represented by counsel and subsequently received any telephone call/s from Defendants or their agent/s and/or employee/s to said person's cellular telephone, for the purpose of collecting or attempting to collect an alleged debt, within the one year prior to the filing of the Complaint.

85. The Class and Sub-Class are collectively referred to as the "Classes".

86. Defendants and their employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in the Classes but believes the Class members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

87. Plaintiffs and members of the Class or Sub-Class were harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiffs and the Class members via their cellular telephones for debt collection purposes, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid and invading the privacy of Plaintiffs and the Class

1    members.  Plaintiffs and the Class members were damaged thereby.

2    88. This suit seeks only damages and injunctive relief for recovery of economic injury

3        on behalf of the Classes and it expressly is not intended to request any recovery for

4        personal injury and claims related thereto.  Plaintiffs reserve the right to expand the

5        Class definition to seek recovery on behalf of additional persons as warranted as

6        facts are learned in further investigation and discovery.

7    89. The joinder of the members of the Classes is impractical and the disposition of their

8        claims in the Class action will provide substantial benefits both to the parties and

9        to the court.

10   90. There is a well-defined community of interest in the questions of law and fact

11       involved affecting the parties to be represented.  The questions of law and fact to

12       the Class and Sub-Class predominate over questions which may affect individual

13       members of the Classes, including the following:

14       a. Whether, within the four years prior to the filing of the Complaint,

15           Defendants made any call/s (other than a call made for emergency purposes

16           or made with the prior express consent of the called party) to Class members

17           with an artificial or prerecorded voice to any telephone number assigned;

18           to a cellular telephone service;

19           Whether the Sub-Class members were contacted by Defendants or their

20           agents regarding an alleged debt after Defendants were informed the Sub-

21           Class members were represented by legal counsel concerning the alleged

22           debt;

23       b. Whether Plaintiffs and the Class members were damaged thereby, and the

24           extent of damages for such violation; and

25       c. Whether Defendants should be enjoined from engaging in such conduct in

26           the future.

27   91. As persons that received at least one call made with an artificial or prerecorded

28

- 17 -

*Marquez et. al. v. Capital One Bank, USA N.A. et. al.* – Second Amended Complaint
Case No. 3:22-cv-0159—GPC-KSC

voice, without Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests antagonistic to any member of the Class.

92. As persons that received at least one call for debt collection purposes after Defendants were on notice that Plaintiffs were represented by legal counsel concerning the alleged debt, Plaintiffs are asserting claims that are typical of the Sub-Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests antagonistic to any member of the Sub-Class.

93. Plaintiffs and the members of the Classes have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the members of the Classes will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants will likely continue such illegal conduct. Because of the size of the individual member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

94. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act and the Rosenthal Fair Debt Collection Practices Act. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with the law. The interest of members of the classes in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

95. Defendants have acted on grounds generally applicable to the Class, thereby

making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class and Sub-Class as a whole.

## CAUSES OF ACTION

### I.

### FIRST CAUSE OF ACTION

### Violations of California Rosenthal Fair Debt Collection Practices Act

### (California Civil Code § 1788, *et. seq.*)

[AS TO ALL DEFENDANTS]

96. Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

97. When Plaintiffs' counsel sent the cease and desist letters to Defendants, both by mail and facsimile, Defendants were aware, or reasonably should have been aware, that Plaintiffs were represented by an attorney.

98. When Ms. Marquez additionally orally stated to representatives for Defendants that she was represented by counsel, Defendants were aware, or reasonably should have been aware, that Ms. Marquez was represented by an attorney, and that Ms. Marquez was exerting her rights not to be contacted directly regarding this debt.

99. Cal. Civ. Code §1788.14(c) provides in relevant part:

> No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:
>
> (c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question.   This subdivision

- 19 -

shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

100.   By calling Plaintiffs on their cellular phones several times each after receipt of the respective cease and desist letters from Plaintiffs' counsel, Defendants violated Cal. Civ. Code §1788.14(c).

101.   As a result of the constant collection calls by Defendants, Plaintiffs have experienced anxiety, irritability, and has at times been unable to calm down as the constant and harassing collection calls by Defendants are overwhelming. Therefore, Plaintiffs have suffered emotional distress as a result of Defendant's violations of Cal. Civ. Code §1788.14(c).

**II.**

**SECOND CAUSE OF ACTION**

**Negligent Violations of the TCPA**

**(47 U.S.C. § 227, *et. seq.*)**

[AS TO ALL DEFENDANTS]

102.   Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

103.   Through the respective cease and desist letters and/or oral revocation, the Plaintiffs revoked any alleged consent for Defendants or their agents or representatives to call Plaintiffs on their cellular telephones with an artificial or prerecorded voice.

104.   The foregoing acts and omissions of Defendants constituted numerous and multiple negligent violations of the TCPA, including but not limited to each one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

105.   As a result of Defendants' negligent violations of 47 U.S.C. §227, *et. seq.*, Plaintiffs are entitled to an award of $500 in statutory damages, for each violation,

pursuant to 47 U.S.C. § 227(b)(3)(B).

106.   Plaintiffs are also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

### III.

### THIRD CAUSE OF ACTION

### Knowing and/or Willful Violations of the TCPA

### (47 U.S.C. § 227 *et. seq.*)

[AS TO ALL DEFENDANTS]

107.   Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

108.   Through the respective cease and desist letters and/or oral revocation, Plaintiffs revoked any alleged consent for Defendants or their agents or representatives to call Plaintiffs on their cellular telephones with an artificial or prerecorded voice.

109.   The foregoing acts of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

110.   Therefore, since Defendants or their agents or representatives continued to call Plaintiffs despite indisputably being informed not to call Plaintiffs on multiple occasions through multiple different means, and that Plaintiffs had revoked any alleged prior consent to call Plaintiffs' cellular telephones via a recorded voice, Defendants' acts were willful.

111.   As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §227, *et. seq.*, the Plaintiffs are entitled to an award of $1,500 in statutory damages for each one of CAPITAL ONE's over one hundred (100) knowing and/or willful violations of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(C).

112.   Plaintiffs are also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Wherefore, Plaintiffs respectfully requests the Court grant Plaintiffs and the Class and Sub-Class members the following relief against Defendants, and each of them:

FIRST CAUSE OF ACTION FOR VIOLATIONS OF THE RFDCPA:

a. Plaintiffs seek for themselves and each Sub-Class member, an award of actual damages pursuant to Cal. Civ. Code §1788.30(a) according to proof;

b. Plaintiffs seek for themselves and each class member, an award of $1,000 for each class representative, as well as statutory damages of $500,000.00 for the class, pursuant to Cal. Civ. Code §1788.17, which incorporates the remedies available under 15 U.S.C. § 1692k(a)(2)(B);

c. Plaintiffs further seek for themselves and each class member, an award of reasonable attorneys' fees and costs;

d. Any other relief the Court may deem just and proper.

SECOND CAUSE OF ACTION FOR NEGLIGENT VIOLATIONS OF THE TCPA:

a. As a result of Defendants' negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

b. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiffs seek for themselves and the Class injunctive relief prohibiting such conduct in the future;

c. Costs of suit;

d. Reasonable attorneys' fees pursuant to, inter alia, the common fund doctrine and California Code of Civil Procedure § 1021.5;

e. Any other relief the Court may deem just and proper.

THIRD CAUSE OF ACTION FOR KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA:

a. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §

227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

b. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiffs seek for themselves and the Class injunctive relief prohibiting such conduct in the future;

c. Costs of suit;

d. Reasonable attorneys' fees pursuant to, inter alia, the common fund doctrine and California Code of Civil Procedure § 1021.5;

e. Any other relief the Court may deem just and proper.

                                    Respectfully Submitted,


Dated: March 16, 2023          By:     BLC LAW CENTER, APC


                                       *s/ Ahren A. Tiller, Esq.*
                                       ahren.tiller@blc-sd.com

                                       Ahren A. Tiller, Esq.
                                       Attorneys for Plaintiffs
                                       and all those similarly
                                       situated.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiffs are entitled to, and demand a trial by jury on all issues triable by a jury.

Respectfully Submitted,

Dated: March 16, 2023,            By:       BLC LAW CENTER, APC

_s/ Ahren A. Tiller, Esq._
ahren.tiller@blc-sd.com

Ahren A. Tiller, Esq.
Attorneys for Plaintiffs
and all those similarly
situated.

_Marquez et. al. v. Capital One Bank, USA N.A. et. al._ – Second Amended Complaint
Case No. 3:22-cv-0159—GPC-KSC